IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-51-D
No. 5:22-CV-60-D

| | |
|---|---|
| FRANKLIN ANTONIO RIOS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On November 22, 2021, Franklin Antonio Rios ("Rios" or "petitioner") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 158]. On December 29, 2021, Rios, through counsel, filed a memorandum in support of his compassionate release motion [D.E. 164]. On January 12, 2022, the government ("respondent") responded in opposition [D.E. 166]. On January 12, 2022, Rios, through counsel, replied [D.E. 169]. On February 7, 2022, Rios moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 408-month sentence [D.E. 170]. On March 24, 2022, the government moved to dismiss [D.E. 177] and filed a memorandum in support [D.E. 178]. On June 7, 2022, Rios responded in opposition [D.E. 185]. As explained below, the court denies Rios's motion for compassionate release, grants the government's motion to dismiss, and dismisses Rios's section 2255 motion.

I.

In 2014, the Cumberland County Sheriff's Office ("CCSO") and the Drug Enforcement Administration began investigating heroin shipments and distribution into Fayetteville, North

Carolina. Presentence Investigation Report ("PSR") [D.E. 102] ¶ 13. From October 20, 2015 to May 2, 2016, undercover agents with the CCSO conducted 12 controlled purchases of heroin and firearms from Rios and his co-defendant Kayla Nicole Hoskins at Rios's residence. Id. ¶ 14. Following a controlled purchase on May 2, 2016, officers obtained a search warrant and searched Rios's residence and automobile and found 21.24 grams of amphetamines, a .38 caliber revolver, a 14 gauge shotgun without a serial number, and cash proceeds from the sale with the CCSO agent. Id. ¶ 15.

Following the arrest of Rios's co-defendant, Hoskins, officers learned details concerning the death of Rios and Hoskins's customer, John Clyde Britt, and Samantha Gonzalez. Id. According to Hoskins, Rios had sold the heroin to Britt and Gonzalez that caused Britt and Gonzalez's death. Id. ¶ 17.

According to the PSR, Rios was responsible for distributing 610 grams of heroin, 22.62 grams of actual methamphetamine, and 233 Clonazepam pills. Id. ¶ 18. Rios also used violence and possessed firearms in relation to his drug trafficking activity and maintained his residence for the purpose of manufacturing and distributing a controlled substance. Id. ¶ 18.

On August 7, 2018, pursuant to a written plea agreement [D.E. 57], Rios pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 846 (count one), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count thirteen), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count seventeen) [D.E. 52, 56]. Pursuant to the plea agreement, the government agreed to dismiss nine counts of distribution of heroin, two counts of felon in possession of a firearm, one count of aiding and abetting the

2

distribution of heroin, and one count of aiding and abetting the distribution of heroin, amphetamines, and Clonazepam. See Plea Ag. [D.E. 57] ¶ 4.a.

The PSR calculated Rios's total offense level to be 29, his criminal history category to be IV, and his advisory guidelines range on count one to be 121 to 151 months' imprisonment, followed by 5 years' consecutive imprisonment on count thirteen and 5 years' consecutive imprisonment on count seventeen. See PSR ¶ 81. Before sentencing, the government made a motion for an upward departure based on, inter alia, Rios's understated criminal history under U.S.S.G. § 4A1.3, the extreme nature of Rios's conduct under U.S.S.G. § 5K2.8, and the post plea agreement reduction in the 35-year mandatory minimum sentence due to the First Step Act. See [D.E. 117]. The government later supplemented its motion with details regarding Rios's role in providing the drugs that led to Samantha Gonzalez's death. See [D.E. 134]. The government also moved for a downward departure under U.S.S.G. § 5K1.1 due to Rios's substantial assistance. See [D.E. 118].

On February 19, 2020, the court held Rios's sentencing hearing. The court adopted the facts in the PSR and resolved Rios's objections. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 146] 2–29. After considering arguments and motions from both parties, the court upwardly departed under U.S.S.G. § 4A1.3 and U.S.S.G. § 5K2.8. See Sent. Tr. 40–46. The court adopted a new total offense level of 37, a new criminal history category of VI, and a new advisory guideline range of 360 to 480 months' imprisonment. See id. at 39–45. After granting the government's downward departure motion under U.S.S.G. § 5K1.1 and thoroughly considering the arguments of counsel, Rios's allocution, victim allocution, and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Rios to 288 months' imprisonment on count one, 60 month's consecutive imprisonment on count thirteen, and 60 months' consecutive imprisonment on count seventeen, for a total of 408 months' imprisonment. Id. at 58–61; [D.E. 140].

3

On February 19, 2020, Rios appealed [D.E. 137]. On March 24, 2021, the Fourth Circuit affirmed. United States v. Rios, 846 F. App'x 184 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 194 (2021). The Fourth Circuit found that "the court did not abuse its discretion and that the 408-month sentence is substantively reasonable." Id. at 187. The Fourth Circuit also noted that the district court "reasonably determined" Rios's sentence given "the seriousness of Rios' offense, his brutal conduct toward his victims, and his repeated recidivism." Id.

## II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A)(i)–(ii); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion

4

requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

5

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1. "[T]he fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude [its] consideration for a reduction." Id. § 1B1.13, cmt. n.2.

On September 29, 2021, Rios applied to his warden for compassionate release. See [D.E. 158-1] 1–2. On November 16, 2021, the warden denied Rios's request. See [D.E. 166] 7. The government agrees that Rios satisfied section 3582(c)(1)(A)'s threshold timing requirements. See Muhammad, 16 F.4th at 130; [D.E. 166] 7. Accordingly, the court considers Rios's motion on the merits.

In support of his motion for compassionate release, Rios cites the COVID-19 pandemic and the BOP's response, his health conditions (including a COVID-19 infection while in prison), and his rehabilitation efforts. See [D.E. 158, 164]. Alternatively, Rios proposes the court grant his compassionate release motion and convert a portion of his sentence to home confinement "if the [c]ourt believes additional confinement is necessary." [D.E. 164] 22.

Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

6

Rios argues that he is at a heightened risk of serious infection from COVID-19 due to obesity[1] and asthma. See [D.E. 164] 11–14. Additionally, Rios claims that his diagnosed hypertension and heightened A1C levels exacerbate his risk of serious infection. Id. at 14. Rios also notes that he had COVID-19 in May 2020 and spent 33 days in the hospital, including 10 days on a ventilator in the intensive care unit. Id. at 15; [D.E. 158] 2–4.

Notwithstanding the foregoing risks, Rios refused the COVID-19 vaccine. See [D.E. 166-3]. Rios has not disclosed to the court any religious or medical reason why he cannot receive a COVID-19 vaccine. "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (quotation omitted)); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting

---

[1] Although the PSR and BOP medical records do not list Rios as "obese," Rios claims that his body mass index ("BMI") is 37.99, which is within the range for obesity. See [D.E. 164] 11.

7

"there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, No. 21-6594, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Baeza-Vargas, 532 F. Supp. 3d. 840, 844-46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Besides the heightened risk of COVID-19 infection dues to his medical conditions, Rios does not otherwise allege that the BOP is not treating and monitoring his medical conditions or that he is unable to provide self-care while incarcerated. And arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current conditions at FCI Edgefield, SC where Rios is incarcerated,[2] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited August 29, 2022); cf. United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, although Rios has refused the COVID-19 vaccine, the wide availability of COVID-19 vaccines for others means that Rios "largely faces the same risk from COVID-19 as those who are not incarcerated." Lemons, 15 F.4th at 751. Furthermore, Rios now has antibodies due to his COVID-19 infection and recovery, and the availability of COVID-19 vaccines allows Rios to reduce his risk should he so choose. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Broadfield, 5 F.4th at 803. Accordingly,

---

[2] As of September 2, 2022, FCI Edgefield is reporting no positive cases of COVID-19 among inmates and staff. See https://www.bop.gov/coronavirus (last visited Sept. 2, 2022).

8

reducing Rios's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

The court assumes without deciding that COVID-19, Rios's health conditions, and his rehabilitation efforts constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Rios's sentence or recommending home confinement. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Rios is 53 years old and is incarcerated for conspiracy to distribute and possess 100 grams or more of a mixture or substance containing a detectable amount of heroin and two counts of possession of a firearm in furtherance of a drug trafficking crime. See PSR ¶¶ 13–18. Rios's criminal behavior was serious, shocking, and extreme. See id.; Sent. Tr. 58-60. Not only did Rios engage in an approximately two-year drug conspiracy in which he moved large quantities of controlled substances, he also demonstrated callous indifference to the community and complete disregard for his "customers." See PSR ¶¶ 13–18. For example, Rios provided heroin to a customer who overdosed. See id. ¶ 17. Instead of immediately helping the person, Rios threatened with a gun a co-conspirator who wanted to call for help. Id. Rios then administered Narcan on the customer. A similar incident happened with another customer two days later. Id. Moreover, in this same time period, Rios provided heroin to yet a third customer (Samantha Gonzalez) who overdosed and died. See id. Essentially, Rios continued to sell heroin that he knew was near-lethal or lethal. Id.

9

Rios's serious criminal behavior is nothing new. Before the conviction for which he is currently incarcerated, Rios had a substantial criminal record including felony and misdemeanor convictions, multiple state reckless driving convictions, a federal counterfeiting conviction, a state false imprisonment and battery conviction, a state forgery conviction, and a state possession of cocaine conviction. See PSR ¶¶ 23–31. Rios has violated terms of probation and supervised release multiple times, including being arrested for drug use and testing positive for drugs, possessing a firearm, possessing drugs, and committing new criminal conduct. See id. ¶¶ 26, 30.

Rios has taken some positive steps while federally incarcerated. For example, Rios has made progress towards obtaining a GED and has enrolled in drug treatment courses. See [D.E. 164] 20. Rios also has not committed an infraction during his current federal confinement.

The court must balance Rios's generally positive post-sentencing record with his serious criminal conduct, his substantial criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2404–05 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Rios's potential exposure to COVID-19, his medical conditions, and his release plan. The court recognizes that Rios plans to live with his girlfriend in Fayetteville and to work as a self-employed mechanic. See [D.E. 164] 20. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Rios's arguments, the government's persuasive response, the need to punish Rios for his serious criminal behavior, to incapacitate Rios, to promote respect for the law, to deter others, and to protect society, the court denies Rios's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2404–05; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91;

10

Kibble, 992 F.3d at 331–32. To the extent Rios requests asks the court to recommend home confinement to the Bureau of Prisons, the court declines.

III.

Rios asserts three claims in his section 2255 motion: (1) procedural error in the PSR leading to an unlawfully higher advisory guideline range and sentence; (2) the government engaged in prosecutorial misconduct by moving for an upward departure; and (3) the court erred by upwardly departing. See [D.E. 170]. In his response, Rios clarifies that he believes the proper criminal history category is a III and that would produce an advisory guideline range of 108 to 135 months. See [D.E. 75] 1. Rios's response also expounds on his prosecutorial misconduct claim, asserting that the prosecutor was "angry" at the passage of the First Step Act and that the "plea agreement [Rios] entered into was no longer valid when the First Step Act came into law." Id. at 2. Lastly, Rios claims that the court improperly relied on information from a confidential informant who Rios was not allowed to confront. Id.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for

11

summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

As for Rios's challenge to this court's upward departure and sentence, Rios already challenged the court's upward departure and sentence on appeal and lost. See Rios, 846 F. App'x at 187. Rios cannot use section 2255 to recharacterize and relitigate a claim he lost on direct appeal. See Bousley v. United States, 523 U.S. 614, 622–23 (1998); United States v. Frady, 456 U.S. 152, 164–65 (1982); Dyess, 730 F.3d at 360; United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Accordingly, Rios's claim concerning the upward departure and his sentence fails.

As for Rios's challenge to his advisory guideline range or to alleged prosecutorial misconduct arising from the government's upward departure motion, Rios procedurally defaulted those claims by failing to raise them on direct appeal. Thus, the general rule of procedural default bars Rios from presenting those claims under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Rios has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged errors about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v.

12

Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, these claims fail.

Alternatively, as for Rios's claim that the PSR contained a procedural error that affected his advisory guideline range, Rios cannot use a section 2255 motion to attack his advisory guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999) ("Barring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding."). None of the alleged deficiencies in the advisory guideline calculations meet this high standard. Moreover, Rios's inability to confront the confidential informant does not constitute an extraordinary circumstance or violate Rios's constitutional rights. See Williams v. New York, 337 U.S. 241, 245 (1949) ("The sentencing judge may consider such information even though obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine."). Thus, Rios's procedural error claim fails.

Alternatively, the collateral-attack waiver in Rios's plea agreement bars Rios from attacking his advisory guideline range, the upward departure, or the court's consideration of evidence from a confidential informant. In his plea agreement, Rios knowingly and voluntarily waived "all rights to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct[.]" Plea Ag. [D.E. 57] ¶ 2(c). In light of Rios's Rule 11 proceeding, the collateral-attack waiver is enforceable. See United States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Thus, these claims.

13

Alternatively, the prosecutorial misconduct claim fails. The core of Rios's prosecutorial misconduct claim centers on the change in how section 924(c) operated between when Rios signed his plea agreement in July 2018 and when the court sentenced Rios in February 2020. When Rios signed the plea agreement, Rios knew that, absent a motion under 18 U.S.C. § 3553(e), he would receive at least a 35-year sentence due to the five-year mandatory minimum on count one, the five-year consecutive mandatory minimum on count thirteen, and the 25-year consecutive mandatory minimum on count seventeen. See Plea Ag. [D.E. 57] ¶ 3. On December 21, 2018, however, the First Step Act took effect and changed the mandatory minimum on the two section 924(c) counts to consecutive sentences of five years and five years. During the sentencing hearing, the prosecutor discussed this change in the law as a possible basis to upwardly depart.

In assessing a prosecutorial misconduct claim, the court must determine "whether the conduct so infected the [sentencing hearing] with unfairness as to make the resulting [sentence] a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir.2002) (quotation omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's . . . conduct [was] improper and, second, the defendant must show that such . . . conduct prejudicially affected his substantial rights . . . ." Id.; see United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010).

Rios's prosecutorial claim fails for at least two reasons. First, Rios's only assertions that come anywhere close to alleging prosecutorial misconduct is that the prosecutor was "very upset" at sentencing and employed "every legal trick available." See [D.E. 185] 1–2. This conclusory allegation does not show that the prosecutor acted improperly at sentencing, including when discussing the change in the law in the First Step Act. See Caro, 597 F.3d at 624–25. Moreover, as the presiding judge at the sentencing hearing, the court never perceived the prosecutor as upset

14

and never observed any misconduct. Second, and in any event, the alleged prosecutorial misconduct of discussing the change in the law in the First Step Act did not affect Rios's sentence. See id. This court did not rely on the change in the law in the First Step Act in deciding to upwardly depart under U.S.S.G. § 4A1.3 or U.S.S.G. § 5K2.8. See Sent. Tr. at 39–46. Likewise, it did not rely on the change in the law in weighing the section 3553(a) factors. See id. at 58–61. Thus, Rios's prosecutorial misconduct claim fails.

After reviewing the claims presented in Rios's motion, the court finds that reasonable jurists would not find the court's treatment of Rios's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

## IV.

In sum, the court GRANTS petitioner's motion for extension of time to file a response to the respondent's motion to dismiss [D.E. 184], DENIES petitioner's motion for compassionate release [D.E. 158], GRANTS respondent's motion to dismiss [D.E. 177], DISMISSES petitioner's section 2255 motion [D.E. 170], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This _2_ day of September, 2022.

JAMES C. DEVER III
United States District Judge