IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-51-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FRANKLIN ANTONIO RIOS, | ) | |
| | ) | |
| Defendant. | ) | |

On September 29, 2023, Franklin Antonio Rios ("Rios" or "defendant"), proceeding pro se, moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 207]. On April 29, 2025, Rios, through counsel, moved for the same [D.E. 211] and filed an exhibit [D.E. 212]. On May 13, 2025, probation filed a report concerning Rios's motion for a sentence reduction [D.E. 214]. In that report, the United States opposed Rios's motions [D.E. 214-1], and Rios asked the court to reduce his sentence on count one from 288 months' imprisonment to 257 months' imprisonment [D.E. 214-2]. As explained below, the court denies Rios's motions for a sentence reduction.

I.

On August 7, 2018, with a written plea agreement, Rios pleaded guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin (count one) and possession of a firearm in furtherance of a drug trafficking crime (counts thirteen and seventeen). See [D.E. 56, 57]. On February 19, 2020, the court held Rios's sentencing hearing, resolved an objection, and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Sent. Tr. [D.E. 146] 5–13; [D.E. 141] 1; PSR [D.E. 102]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Rios's total offense level to be

29, his criminal history category to be IV, and his advisory guideline range to be 121 to 151 months' imprisonment on count one and 60 months' consecutive imprisonment on counts thirteen and seventeen, respectively. See [D.E. 141] 1; PSR ¶¶ 78–81. After considering evidence and the arguments of counsel about an upward departure for "unusually brutal or degrading [conduct] to a victim," the court recalculated Rios's total offense level to be 37, his criminal history category to be VI, and his advisory guideline range to be 360 to 480 months' imprisonment on count one with no change to counts thirteen and seventeen. Sent Tr. 44; see id. at 13–45. After hearing argument on substantial assistance and weighing the 18 U.S.C. § 3553(a) factors, the court sentenced Rios to 288 months' imprisonment on count one and 60 months' consecutive imprisonment on counts thirteen and seventeen, respectively, for a total of 408 months' imprisonment. See Sent. Tr. 46–61; [D.E. 140]. That same day, Rios appealed. See [D.E. 137]. On March 24, 2021, the United States Court of Appeals for the Fourth Circuit affirmed. See [D.E. 152, 153]. On June 22, 2021, Rios filed a petition for a writ of certiorari. See [D.E. 156]. On October 4, 2021, the United States Supreme Court denied the petition. See [D.E. 157].

On November 22, 2021, Rios moved for compassionate release under the First Step Act [D.E. 158]. On February 7, 2022, Rios moved to vacate his sentence under 28 U.S.C. § 2255 [D.E. 170]. On September 2, 2022, the court denied the motion for compassionate release and dismissed the motion to vacate [D.E. 188]. On September 19, 2022, Rios appealed dismissal of his motion to vacate [D.E. 190]. On October 3, 2022, Rios renewed his motion for compassionate release under the First Step Act [D.E. 194], which the court dismissed [D.E. 197]. On July 27, 2023, the Fourth Circuit affirmed denial of compassionate release [D.E. 203, 204].

II.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if

2

the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see United States v. Barrett, 133 F.4th 280, 282–83 (4th Cir. 2025); United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019); United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (cleaned up). At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up). If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., United States v. Navarro-Melendez, No. 1:18-CR-91, 2024 WL 1722524, at *1 (W.D.N.C.

3

Apr. 22, 2024) (unpublished), aff'd, No. 24-6627, 2024 WL 4579416 (4th Cir. Oct. 25, 2024) (per curiam) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81, 490 (2011); United States v. Moody, 115 F.4th 304, 315–16 (4th Cir. 2024); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. High, 997 F.3d 181, 187–91 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam); United States v. McDonald, 986 F.3d 402, 410–12 (4th Cir. 2021); Martin, 916 F.3d at 395–98.

Rios seeks a sentence reduction under Amendment 821 Part A. See [D.E. 207] 1; [D.E. 211] 1; [D.E. 214-2] 1–2. Amendment 821 Part A, which became effective on November 1, 2023, amended Chapter Four of the Sentencing Guidelines by striking the old section 4A1.1(d). See U.S.S.G. app. C, amend. 821. Before Amendment 821, section 4A1.1(d) added two status points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. § 4A1.1(d) (2021). Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d); Barrett, 133 F.4th at 282–83.

At step one, the court calculates Rios's new advisory guideline range to be 108 to 135

months' imprisonment based on a total offense level 29 and a criminal history category III. See [D.E. 214] 1. At step two, the court has reviewed the entire record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 464–66; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023); United States v. Swain, 49 F.4th 398, 402 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished).

The section 3553(a) factors counsel against reducing Rios's sentence. Rios is 56 years old and engaged in heinous criminal conduct. See PSR ¶¶ 13–18; Sent Tr. 45. The Cumberland County Sheriff's Office in Fayetteville, North Carolina, and the Drug Enforcement Administration investigated Rios, who had been receiving shipments of heroin sourced from New Jersey. See PSR ¶ 13. Between October 20, 2015, and May 2, 2016, an undercover agent and confidential source made 12 controlled purchases of heroin and firearms from Rios—totaling 155.39 grams of heroin and a .45 caliber firearm, 30/30 rifle, 20 gauge shotgun, and 88 model shotgun. See id. at ¶ 14. All but one purchase occurred at Rios's residence in Hope Mills, North Carolina. See id. From searches of the residence and Rios's vehicle, law enforcement recovered 1.25 grams of heroin, 22.62 grams of amphetamine (actual), 233 Clonazepam 0.5mg pills, digital scales, recorded cash from the controlled purchases, an additional $1,011, a .38 caliber revolver, and a 14 gauge shotgun with no serial number. See id. at ¶ 15. In sum, Rios is accountable for 1,062.65 kilograms of converted drug weight. See id. at ¶ 18.

On May 2, 2016, Rios's codefendant ("Hoskins") told law enforcement she met Rios in

5

mid-2014 and began buying heroin from him in early 2015. See id. at 16. In February 2015, Hoskins went with Rios and his heroin supplier ("Monroe") to New Jersey to purchase 453.6 grams of heroin from Monroe's supplier. See id. In January 2016, Hoskins began living intermittently with Rios, from whom she daily purchased at least 0.16 to 0.8 grams of heroin. See id.

On June 27, 2018, Hoskins provided a protected statement that she was present when Rios's associate ("Britt") overdosed the first time in early 2016. See id. at ¶ 17. Hoskins had wanted to call the police, but Rios took the phone and would not let her perform CPR. See id. Rios sat on the bed and did nothing until Hoskins threatened to call the police. See did. In response, Rios retrieved a gun from the dresser, pointed it at Hoskins's head, and pushed her from the room. See id. RIOS told her that he would "take care of it." Id. Hoskins stated she believed Rios used three or four bottles of Narcan on Britt. See id. About two days later, Britt came to Rios's residence and said someone overdosed in his truck. See id. Hoskins again wanted to call an ambulance. See id. Rios again told her to stay out of it, and slapped her in the face. See id. Britt told Hoskins the man "used a bag of [Rios's] stuff." Id. Rios administered Narcan to the man in Britt's truck. See id. Rios then complained about Britt and the man overdosing. See id.

Investigative materials revealed that Britt overdosed again and died in 2018. See id. at ¶ 14 n.1. Hoskins told law enforcement that Britt overdosed and died from heroin that Rios sold him. See id. at ¶ 17. Another woman ("Samantha") also overdosed and died from the same. See id. Hoskins stated she knew Samantha's heroin came from Rios because Hoskins was with Rios the day he said he "served" Samantha. See id. Samantha died within 48 hours. See id. But Rios was not deterred. Hoskins stated Rios had "no affection for life." Id. Rios continued to sell drugs even aware of the overdose deaths from his products, claiming the overdose victims deserved it. See id. For some customers, including Hoskins, Rios injected the heroin himself. See id.

6

At his sentencing, the government presented multiple videos that Rios filmed of customers "as they passed out from his substances," arguing that Rios had a "morbid fascination with it but wasn't willing to step in and help." Sent Tr. 56; see id. at 14–15. An agent testified that while she was undercover, Rios told her about when Hoskins "overdosed . . . defecated and thr[ew] up on the bed and he had to get rid of the bed. And he just spoke very lightly of it, you know, with a smirk on his face laughing about it . . . . [Rios] said [overdoses] just happened and it was just a common thing." Id. at 26. After reviewing all the evidence, the court observed that Rios's conduct to Hoskins, Britt, and Samantha was "unusually heinous, cruel, brutal, or degrading to [his] victims in connection with him selling [heroin] that prolongs the pain and humiliation of those who buy it." Sent Tr. 45. Rios disagreed and told the court, "[W]hat the detective said, half of that I take responsibility but I don't take responsibility for . . . the death or stuff I'm not responsible for that stuff." Id. at 47.

Rios's horrifying criminal behavior was not new. In 1997 and 1998, Rios sustained multiple state convictions for hunting and driving misdemeanors. See PSR ¶¶ 23–25. In 2000, Rios received a federal felony conviction for uttering counterfeit obligations. See id. at ¶ 26. While on supervision, Rios committed new criminal conduct, tested positive for drug use, and failed to notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer. See id. While incarcerated, Rios received an infraction for phone abuse or disrupting monitoring. See id. In 2001, Rios sustained state convictions for simple battery and felony false imprisonment after physically assaulting a man that Rios then forced to get into his vehicle. See id. at ¶ 27. In 2009, Rios received a state conviction for reckless driving. See id. at ¶ 28. In 2011 and 2012, Rios's conduct escalated again to common law forgery and cocaine possession. See id. at ¶¶ 29–30. While on supervision, Rios tested positive for drug use, possessed

7

a firearm, possessed drugs, and committed new criminal conduct. See id. at ¶ 30.

Rios cites some positive steps he has taken while federally incarcerated, such as participating in educational programming, passing the United States Citizenship test, maintaining work assignments, and paying his special assessment and restitution. See [D.E. 212] 1–8; [D.E. 214] 2; [D.E. 214-2] 1; [D.E. 214-3] 1–36; cf. Pepper, 562 U.S. at 491–92. Rios also emphasizes that he has not incurred any infractions during this term of incarceration, but the court expects the same from all inmates. See [D.E. 214-2] 1.

Rios asks the court to reduce his sentence on count one from 288 months' imprisonment to 257 months' imprisonment. See [D.E. 214-2] 1. This court disagrees with the Commission's retroactive policy change concerning status points. See Spears v. United States, 555 U.S. 261, 264–66 (2009) (per curiam) (acknowledging that a district court may reject and vary categorically from the guidelines based on a policy disagreement with the guidelines); Kimbrough v. United States, 552 U.S. 85, 108–11 (2007) (same); United States v. Rivera-Santana, 668 F.3d 95, 101 (4th Cir. 2012) (same). The policy change ignores how status points help to promote respect for the law for every offender who commits a new crime while on supervision. In explaining its reasons for the Amendment, the Commission acknowledged that status points still serve multiple purposes of sentencing, including addressing the offender's lack of respect for the law. See U.S.S.G. supp. app. C, amend. 821, Reason for Amendment, 241 (explaining why the Commission retained status points for offenders in higher criminal history categories); U.S. Sent'g Comm'n Pub. Meeting Transcript, 27–28 (Aug. 24, 2023), https://www.ussc.gov/policy making/meetings-hearings (same). This court finds that status points serve an important purpose in promoting respect for the law for all offenders, not just offenders in higher criminal history categories. An offender who is on supervision when he commits a new crime shows even less respect for the law than an offender

8

who is not on some form of supervision. A sentencing court may properly account for that difference in status in order to promote respect for the law under section 3553(a).

In any event, even if the court agreed with the Commission's new policy, the court would not reduce Rios's sentence. Rios is a violent criminal whose interactions with the state and federal criminal justice systems for his serious and violent criminal behavior did not prevent escalating criminal behavior or serious repeated infractions while on supervision.

The court has considered the entire record and all relevant policy statements. See Concepcion, 597 U.S. at 494–95 & n.4; Pepper, 562 U.S. at 490; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 410–12; Martin, 916 F.3d at 398. The court has balanced Rios's rehabilitation efforts while federally incarcerated with his serious criminal conduct, his serious criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. See Concepcion, 597 U.S. at 496–502; Pepper, 562 U.S. at 480–81; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the section 3553(a) factors, the parties' arguments, and the need to punish Rios for his serious criminal behavior, to incapacitate Rios, to promote respect for the law, to deter others, and to protect society, the court denies Rios's motions for a sentence reduction. See, e.g., Concepcion, 597 U.S. at 496–502; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020). Even if the court miscalculated the new advisory guideline range, the court would impose the same sentence as an alternative variant sentence in light of the entire record and the section 3553(a) factors. See 18

9

U.S.C. § 3553(a); <u>United States v. Gomez-Jimenez</u>, 750 F.3d 370, 382–86 (4th Cir. 2014); <u>United States v. Hargrove</u>, 701 F.3d 156, 161–65 (4th Cir. 2012).

III.

In sum, the court DENIES defendant's motions for a sentence reduction [D.E. 207, 211].

SO ORDERED. This ⸻ day of March, 2026.

JAMES C. DEVER III<br>
United States District Judge

10